IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENO B.,

    Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Respondent.

No. 19 C 1593

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Keno B.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Commissioner of Social Security ("Commissioner"), denying his applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. *See* [ECF No. 10]. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Claimant filed a Memorandum in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 15], and the Commissioner filed a Motion for Summary Judgment [ECF No. 22]. This matter is fully briefed and ripe for review.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

For the reasons discussed this Memorandum Opinion and Order, the Court grants Claimant's Memorandum in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 15] and denies the Commissioner's Motion for Summary Judgment [ECF No. 22]. This matter is remanded to the Social Security Administration for further proceeding consistent with the Court's Memorandum Opinion and Order.

## PROCEDURAL HISTORY

Claimant filed applications for disability insurance benefits and supplemental security income on July 26, 2016 pursuant to Titles II and XVI of the Social Security Act, alleging a disability onset date beginning April 1, 2015. (R. 24, 206-18). His applications were denied initially on August 26, 2016, and upon reconsideration on October 31, 2016 (R. 24, 108-11, 114-19). On November 9, 2019, Claimant submitted a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. 24, 120-21). Claimant appeared and testified at a hearing held on February 5, 2018 before ALJ Bill Laskaris. (R. 24, 38-66). At the hearing, Claimant was represented by attorneys Lawrence Disparti and Aaron Goldman. (R. 24). During the hearing, the ALJ also heard testimony from vocational expert Diamond Warren. (R. 60-65).

On June 1, 2018, the ALJ issued his decision denying Claimant's applications for disability insurance benefits and supplemental security income. (R. 24-32). In finding Claimant was not disabled within the meaning of the Act, the ALJ followed the five-step evaluation process required by Social Security Regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since April 15, 2015. (R. 27). At step two, the ALJ found that Claimant has severe impairments, including systemic lupus erythematosus and associated dermatitis, degenerative joint disease, and chronic kidney disease as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c). (R. 27).

At step three, the ALJ concluded Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 27). The ALJ then found Claimant has the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he is limited to: "standing and/or walking for up to 6 hours in an 8-hour workday; sitting for up to 6 hours in an 8-hour workday; never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs; occasionally stooping, crouching, kneeling, and crawling; and avoiding concentrated exposure to extreme cold temperatures." (R. 27).

At step four, the ALJ found that Claimant was not capable of performing his past relevant work as a warehouse worker. (R. 30). After listening to the testimony of the vocational expert and considering Claimant's age, education, work experience and RFC, the ALJ concluded at step five that jobs exists in significant numbers in the national economy that Claimant could perform. (R. 30-31). Based on all of these reasons, the ALJ found Claimant was not disabled as defined in the Social Security Act from April 1, 2015, the onset date of his alleged disability, through June 1, 2018, the date the ALJ issued his decision. (R. 31).

On June 18, 2018, Claimant timely filed a request for review. (R. 202). The Appeals Council declined to review the matter on January 18, 2019 (R. 1-6), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. *See* 42 U.S.C. § 405(g); *see also Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-676 (7th Cir. 2008).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant was diagnosed with lupus when he was thirteen years old. (R. 517). Since then, he has been trying to manage his autoimmune disease and its related conditions, including joint pain, kidney problems, and skin irritations such as rashes and boils. (R. 47-49, 52, 56, 59). In this case, Claimant argues that: (1) the ALJ's RFC determination is not supported by substantial evidence; and (2) the ALJ's evaluation of Claimant's symptoms also is not supported by the record. The Court agrees with Claimant that the ALJ's RFC finding lacks evidentiary support and sufficient explanation.

When making a functional capacity determination, an ALJ is required build an accurate and logical bridge from the evidence in the record to his conclusion, and he is not allowed to "play doctor," by using his own lay opinions to fashion greater functional restrictions that are not tethered to any evidence in the record or any medical opinion. *See Blakes v. Barnhart,* 331 F.3d 565, 570 (7th Cir. 2003); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000) (holding that the ALJ failed to build a logical bridge and relied on conjecture and her own assessment of the medical evidence to reach conclusions unsupported by the record). The record here contains two medical opinions. First, state agency medical consultant Richard Bilinsky, M.D., opined in August 2016 that Claimant could perform medium work subject to additional postural limitations (R. 71-72; 79-80). A few months later in October 2016, a second state agency medical consultant Douglas Chang, M.D., reviewed Claimant's file and found that Claimant could perform only light work due to lupus-related knee pain and included other postural restrictions found by Dr. Bilinsky. (R. 91-92; 101-02).

The ALJ gave "great weight" to the two opinions of the non-examining State agency doctors "to the extent they are consistent with the record as a whole." (R.29. The ALJ, however,

5

found that Claimant had more limitations than the state agency doctors had found, and he fashioned a more limited RFC for Claimant based on his assessment of Claimant's testimony and the subsequent medical records that had been submitted at the hearing. The ALJ stated that he provided for greater functional limitations than those found by either Dr. Bilinsky or Dr. Chang because, according to the ALJ, they "did not have the benefit of reviewing evidence introduced at the hearing level, which supports a greater degree of exertional, postural, and environmental limitation." (R.29).

Claimant argues that the ALJ failed to identify any evidence in the record that supported his conclusion, and therefore, the ALJ's functional capacity finding is not supported by substantial evidence. The Commissioner disagrees with Claimant, arguing that the ALJ's determination is supported by substantial evidence because he gave "great weight" to the opinions of both State agency doctors, and those opinions were consistent with the record. (R. 29). More specifically, the Commissioner contends that the ALJ's assessment is not erroneous because his "RFC finding was *more restrictive* than both opinions." Commissioner's Brief [ECF No. 23], 3 (emphasis in original). In other words, the Commissioner asserts that the ALJ's assessment is acceptable and more than sufficient because he gave Claimant the benefit of the doubt and the medical opinions do not impose greater restrictions than those found by the ALJ.

This argument is not persuasive. The ALJ found "a greater degree of exertional, postural, and environmental limitations" based on Claimant's testimony and potentially other evidence in the record that the ALJ had reviewed but that was not reviewed by the state agency doctors (R. 29), and that fundamentally is where the evidentiary gap lies.[4] As the Seventh Circuit recognized

---

[4] *See Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (holding that a failure to rely on any physician opinion evidence created an evidentiary gap); *Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) (remanding where ALJ ignored new medical issue but should have sought more information); *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000) (remanding where ALJ discounted severity of claimant's arthritis

in *Stage v. Colvin*, 812 F.3d 1121 (7th Cir. 2016), "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." 812 F.3d at 1125. The ALJ gave the opinions of the state agency doctors "great weight" to the extent they were "consistent with the record as a whole" but then explained that "Drs. Bilinsky and Chang did not have the benefit of reviewing evidence introduced at the hearing level, which support a greater degree of exertional, postural, and environmental limitation." (R. 29). Notably, the Seventh Circuit previously has recognized that opinions from reviewing physicians are "essentially worthless" when they did not have access to the full record. *Childress v. Colvin*, 845 F. 3d 789, 792 (7th Cir. 2017).

In this case, the ALJ did not offer any explanation how or why the opinions of the state agency doctors were inconsistent with the subsequent medical records they did not review but that the ALJ had available to him.[5] Nor did the ALJ specifically identify what additional evidence he relied upon to support his conclusion that Claimant needed "a greater degree of exertional, postural, and environmental limitation." (R. 29). Because of this evidentiary gap and lack of explanation, the ALJ's assessment of Claimant's functional capacity is not supported by substantial evidence and, therefore, cannot stand. *See Briscoe v. Barnhart,* 425 F.3d 345, 351 (7th Cir. 2005).

It seems that the ALJ was persuaded by something in the record or testimony from Claimant himself that he felt required or justified greater functional limitations. However, it is not clear what evidence the ALJ relied upon in reaching that conclusion. In addition, the Court

---

without ordering updated x-rays); *Murphy v. Astrue,* 496 F.3d 630, 635 (7th Cir. 2007) (remanding where ALJ failed to obtain additional records needed for medical expert to provide full and fair evaluation of impairments).

[5] In his brief, Claimant points out that nearly 600 pages of medical records were admitted after Dr. Chang gave his opinion in October 2016. Claimant's Brief [ECF No. 15], at 6 (citing R. 390-984).

wonders how the state agency doctors or a medical expert would have evaluated that evidence or testimony, whether they would have agreed with the ALJ's assessment, or potentially would have found even greater or different limitations than did the ALJ. It is pure conjecture as to how a doctor would have evaluated Claimant's testimony and the additional medical evidence the ALJ relied upon, whatever that may have been. The Court cannot, should not, and will not speculate about how a trained physician, rather than the ALJ, would have evaluated that evidence. That is why remand is required.[6]

Although the Commissioner says that the ALJ gave Claimant the benefit of the doubt (*see* Claimant's Brief [ECF No. 23], at 2-3) by including greater functional restrictions than the state agency doctors found to be appropriate, it is not clear to the Court how much of a benefit of the doubt the ALJ gave Claimant or what justified the ALJ's assessment. If the ALJ had given Claimant the complete benefit of any doubt, as the Commissioner suggests he did here, then he presumably would have found that Claimant is disabled, which the ALJ did not do. While the ALJ may have given Claimant *some* benefit of the doubt, the ALJ did not credit all his testimony and/or the additional evidence introduced at the hearing level, and the Court does not know how the ALJ made that distinction and determination. That is where the problem lies. There is no further explanation from the ALJ or any citation to the record about why he concluded that greater restrictions were required for Claimant. While the ALJ need not discuss every piece of evidence, and need not do so, the ALJ nonetheless must build a logical bridge between the record evidence

---

[6] The Court acknowledges that Claimant may share some responsibility for not raising the issue with the ALJ and/or objecting to the outdated opinions from the state agency doctors as the Commissioner suggests. Commissioner's Brief [ECF No. 23], at 3-4. At base, however, it is the ALJ's responsibility to recognize a potential need for further medical evaluation of Claimant's condition based on the then-current medical record before making any functional capacity determination and to provide sufficient explanation (with citations to the record evidence) for his assessment, particularly when the ALJ himself is relying on that evidence to fashion a more limited functional capacity for a claimant.

and his assessment of that evidence.[7] The Court recognizes that the ALJ's assessment and RFC determination ultimately may be reasonable and supported by sufficient evidence, but at this time, the Court does not know what specific evidence the ALJ relied upon to fashion the restrictions within the RFC that he found to be appropriate. Therefore, the Court has no choice but to remand for further explanation and/or medical review, if necessary.

Because this case is being remanded for the reasons discussed above, the Court does not have to, and will not, address Claimant's remaining argument about an alleged deficiency in the ALJ's symptom analysis. Claimant argues that the ALJ failed to fully develop the record about Claimant's subjective symptoms, his course of treatment, and a perceived non-compliance with treatment recommendations. The Commissioner disagrees and argues that the ALJ's subjective evaluation is supported by substantial evidence. Neither party should assume that the Court either agrees or disagrees with the ALJ's analysis of Claimant's symptoms.

As discussed above, the ALJ gave Claimant some benefit of the doubt and credited some of Claimant's testimony when he fashioned more restrictive functional limitations than were recommended by the state agency physicians, but the ALJ did not credit other limitations, particularly in relation to the boils Claimant can develop given his medical conditions, which Claimant contends can contribute to him being off-task, limited concentration, and difficulties with prolonged sitting. *See* Claimant's Reply [ECF No. 24], at 8-9, 11. On remand, the ALJ should sufficiently explain his assessment of both Claimant's functional capacity and his symptom

---

[7] *See, e.g., Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002) (holding that regardless of whether there is adequate evidence in the record to support an ALJ's decision, the ALJ must rationally articulate the grounds for her decision, building an accurate and logical bridge between the evidence and her conclusion, because the court's review is confined to the reasons supplied by the ALJ); *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996) (concluding that the court "cannot uphold a decision by an administrative agency, any more than [it] can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result").

analysis and support his evaluation and conclusion with citations to the record. The Court expresses no opinion about the decision to be made on remand other than to say that the ALJ should build a logical bridge between the medical evidence in the record and his evaluation of Claimant's symptoms and his assessment of Claimant's functional capacity, whatever those determinations may be.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, the Court grants Claimant's Memorandum in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 15] and denies the Commissioner Motion for Summary Judgment [ECF No. 22]. This matter is remanded to the Social Security Administration for further proceeding consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 2, 2021